# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2020, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael B. Troemel
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Monika PrekopaTalbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of K.B. (Minor Child)

and

T.B. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 30, 2020

Court of Appeals Case No.
20A-JT-816

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

The Honorable Tricia L. Thompson, Magistrate

Trial Court Cause No.
79D03-1906-JT-88

**Crone, Judge.**

# Case Summary

[1] T.B. (Father) challenges the sufficiency of the evidence to support the termination of his parent-child relationship with his son, K.B. (Child). We affirm.

# Facts and Procedural History

[2] The facts most favorable to the judgment are as follows. Child, born in June 2017, is the youngest of five children born to Father and A.L. (Mother). His four older siblings had been removed from the home and adjudicated children in need of services (CHINS) in 2016, after the Indiana Department of Child Services (DCS) substantiated reports of numerous incidents of physical abuse by Father against Mother and drug use by both parents. Meanwhile, Child tested positive for alcohol at birth. Father lived in the same home with Child for "a couple months after he was born." Tr. Vol. 2 at 64.

[3] In 2018, Mother secured an apartment through the Fresh Start program. In May 2018, when the older siblings were having an in-home trial visit at Mother's apartment, Child and some of the siblings tested positive for cocaine. Not long after, Child was removed and placed in foster care. Around that same time, Father tested positive for alcohol and marijuana.

[4] In June 2018, DCS filed a separate petition seeking to have Child adjudicated a CHINS. Father was ordered to participate in home-based case management,

relapse prevention, supervised parenting time, and an updated substance abuse assessment. He completed the substance abuse assessment as well as a character restoration program and engaged in supervised visits with Child. Mother continued to report Father for domestic violence. At times, he would come to her apartment and refuse to leave. In August 2018, he entered her apartment through the balcony, argued with Mother, and held her at knifepoint. Not long after, Mother obtained a protective order against Father. Mother and Father were seen in public together on one occasion during the time the protective order was in place. *Id*. at 85. Father moved to Chicago in August 2018, where he lived with a relative and found a job. He did not contact DCS, and his whereabouts were unknown. He remained there for a year and did not participate in services, submit to drug screens, or contact Child during that time. DCS officially suspended Father's supervised parenting time in January 2019 for noncompliance. Father last visited Child in August 2018.

[5] In May 2019, Father's and Mother's parental relationships with the older siblings were terminated. A month later, DCS changed Child's permanency plan to termination and adoption by his foster parents, whose home includes two of Child's older siblings. One of those siblings suffers from the same seizure disorder as Child. DCS filed its termination petition in July 2019, and the trial court conducted factfinding hearings in October and December 2019. Court appointed special advocate (CASA) Valeska Hilbun and DCS family case manager (FCM) David Lloyd testified concerning Child's seizure disorder and learning disabilities, for which he receives treatment, and about the strong bond

between Child and his foster parents. Both articulated their concern about the potential trauma to Child if visits with Father were reinstated, and both concluded that termination and adoption are in Child's best interests. In March 2020, the trial court issued an order with findings and conclusions terminating Father's and Mother's parental relationships with Child. Father now appeals.[1] Additional facts will be provided as necessary.

## Discussion and Decision

[6] Father contends that the trial court erred in terminating his parental relationship with Child. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re A.G.*, 45 N.E.3d 471, 476 (Ind. Ct. App. 2015), *trans. denied* (2016). Unchallenged findings stand as proven. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*. In conducting our review, we neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the

---

[1] Mother is not participating in this appeal.

evidence and reasonable inferences most favorable to the judgment. *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted).

"Parents have a fundamental right to raise their children – but this right is not absolute. When parents are unwilling to meet their parental responsibilities, their parental rights may be terminated." *Matter of Ma.H.*, 134 N.E.3d 41, 45-46 (Ind. 2019) (citation omitted), *cert. denied* (2020). To obtain a termination of a parent-child relationship, DCS is required to establish in pertinent part:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> ….
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[8] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.* "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted). "[I]f the court finds that the allegations in a [termination] petition … are true, the court *shall* terminate the parent-child relationship." Ind. Code § 31-35-2-8(a) (emphasis added).[2]

---

[2] The argument section of Father's brief consists largely of complaints about his difficult life and includes statements that impugn the trial court's discernment and intellect. *See, e.g.*, Appellant's Br. at 12 ("It seems to be lost on the trial court," "The notion that the court can waive [sic] its magic wand and vanquish a parent's difficulties is not realistic."). We remind counsel that appellate briefs should "present this Court with concise arguments supported by statutory law, case law, and the record. Ind. Appellate Rule 46(A)(8). 'Invectives are not argument and have no place in legal discussion.'" *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 201

## Section 1 – Father has failed to establish that the trial court clearly erred in concluding that there is a reasonable probability that the conditions that resulted in Child's removal from or continued placement outside the home will not be remedied.

Father asserts that the trial court clearly erred in concluding that a reasonable probability exists that the conditions that led to Child's removal or continued placement outside the home will not be remedied. When assessing whether there is a reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the child's removal but also the bases for continued placement outside the home. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. Moreover, "the trial court should judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *E.M.*, 4 N.E.3d at 643. "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *J.T.*, 742 N.E.2d at 512. In making its case, "DCS need not rule out all

n.3 (Ind. Ct. App. 2014) (quoting *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Muncie & Portland Traction Co.*, 166 Ind. 466, 468, 77 N.E. 941, 942 (1906)), *trans. denied*.

possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). The court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

[10] Here, Father does not specifically challenge any of the trial court's findings. These findings reflect Father's documented history of drug use and domestic violence against Mother, the latter of which precipitated a protective order; his intermittent incarceration; the fact that he left the state without notifying DCS and his whereabouts were unknown for over one year; and his hiatus from any services, drug screens, or contact with Child for more than one year. Father claimed that he moved to Chicago for cheap rent and a better job and that he continued to use marijuana only because it was legal in Illinois. He admitted that he did not call Child or send him any cards or letters during his lengthy absence from the state. Tr. Vol. 2 at 154. Moreover, he rationalized his failure to contact DCS by claiming that he did not have mail or a phone and did not know whom to call. *Id*. at 153-54. His last visit with Child was on August 22, 2018, and DCS suspended his visitation in January 2019 due to noncompliance. Simply put, Father made a choice, and with that choice came his complete absence from Child's life for an extended period. He walked away from the plan that might have preserved his relationship with Child. *See Lang v. Starke*

*Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (failure to exercise right to visit one's children demonstrates lack of commitment to complete actions necessary to preserve parent-child relationship), *trans. denied*.

[11] By the time Father returned to Indiana in September 2019 and requested reinstatement of his court-ordered visitation, DCS had long since suspended it and the case had transitioned into the termination phase. Even then, Father notified DCS that he intended to return to Chicago. He ultimately did not relocate there, but the trial court made a finding that reinstatement of Father's visits would be too traumatic for Child. While we acknowledge Father's recent efforts, particularly pertaining to his housing and employment, we note that the trial court, in its discretion, was free to discount evidence concerning these last-minute remedial efforts. *See K.T.K.*, 989 N.E.2d at 1234 (trial court has discretion to disregard or discount evidence of remedial efforts made only shortly before termination hearing). Father has failed to demonstrate that the trial court clearly erred in concluding that there is a reasonable probability that the conditions that led to Child's removal and continued placement outside the home will remain unremedied.

## Section 2 – Father has failed to develop cogent argument to support his challenge to the trial court's conclusion that termination is in Child's best interests.

[12] In his statement of the issues and summary of the argument, Father also challenges the trial court's conclusion that termination of the parent-child

relationship is in Child's best interests. However, we find nothing in his argument section concerning this issue, except the following: "The child also has an interest in being with his biological parent. There is no harm to the child for him to re-establish a solid relationship with a now stable parent." Appellant's Br. at 12. Father provides no citations to the record or to applicable law on best interests of the child and has failed to develop cogent argument as required by Indiana Appellate Rule 46(A)(8). He therefore has waived consideration of this issue on appeal. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 n.4 (Ind. Ct. App. 2013), *trans. denied*.

[13] Waiver notwithstanding, we must look at the totality of the circumstances to determine what is in the best interests of a child. *In re A.W.*, 62 N.E.3d 1267, 1275 (Ind. Ct. App. 2016). Although not dispositive, permanency and stability are key considerations in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Likewise, "the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.

[14] Here, the totality of the circumstances shows that Child, age two and a half at the time of the factfinding hearings, has significant medical needs and learning disabilities. Both FCM Lloyd and CASA Hilbun articulated their concern over the extra effort and attention needed to address these issues. They testified that Child's foster parents had gone above and beyond, having made special efforts to ensure that he received his medical treatments at Peyton Manning Children's Hospital, that he was properly supervised, particularly during meals due to his

high risk of choking, and that he received his learning services through First Steps. FCM Lloyd testified that the foster parents have experience dealing with the seizure disorder because one of Child's older siblings, whom they also adopted, suffers from the same disorder. Tr. Vol. 2 at 81. FCM Lloyd articulated his concern about long-term negative effects on Child's emotions, demeanor, and mental health if visits with Father were resumed. CASA Hilbun testified that she believes Child sees his foster parents "as his rock" and that Child has no bond with his biological parents. *Id*. at 131. Both providers concluded that termination and adoption are in Child's best interests, emphasizing Child's particular need for permanency and stability, the bond between Child and his foster family, which includes two of Child's siblings, and the lack of bond between Child and Father. The evidence and reasonable inferences are sufficient to support the trial court's conclusion that termination of Father's parental rights is in Child's best interests. Accordingly, we affirm.

[15] Affirmed.

Robb, J., and Brown, J., concur.